he and his colleagues had authority to sell the decedent's land, from which he was released. If he were not liable to the purchasers, he could not be liable to any one else.

Judgment reversed, and a venire de novo awarded.

PARGET *v.* STAMBAUGH.

A life-estate in improved lands cannot be sold by the sheriff since the acts of 1836 and 1840.

ERROR to the Common Pleas of Adams county.

*May* 18.—This was an ejectment against a purchaser at sheriff's sale, in August, 1842, of the property of the plaintiff. The title shown was a conveyance to the wife of the plaintiff. Defendant had entered under his deed from the sheriff. It was shown the land yielded a rent.

The court (Durkee, President) charged the jury, that " The sale of John Stambaugh's life-estate in the premises in dispute, on the fi. fa., issued against him, was void. The defendant, therefore, acquired no title under it, and the plaintiffs are entitled to recover."

*Smyser,* for plaintiff in error, contended that John Stambaugh, the defendant, had such an estate in the property, as, independent of and prior to any statutory provision, changing the remedy, was the subject of levy and sale on execution.

That although the act of 16th June, 1836, sects. 68—71, (Pamph. Laws, 1835, 1836, pp. 778, 779,) took away this right, and substituted, in lieu of a sheriff's sale on execution, a delivery of the premises to the plaintiff by liberari facias, at a rent to be fixed by an inquest, or a sequestration of the rents, issues, and profits, at the option of the plaintiff; yet, that subsequently, this was all repealed by the act of 13th October, 1840, sect. 9, (Pamph. Laws, 1841, page 3,) and the old law, as it existed prior to 1836, revived thereby, except so far as it is altered by the act of 1840. He referred to the 6th, 7th, 8th, and 9th sections, to show that the court are now only bound to appoint a sequestrator, *on the application of a lien creditor,* and that if the creditor makes no such application, he may proceed in the old way by levy and sale.

He then referred to act of 16th July, 1842, (Pamph. Laws, 1842, page 408, sect. 3,) providing a stay of execution in certain cases, to

show that the act of 1840 had received a legislative construction, in conformity with the doctrine now maintained by the plaintiff in error.

All these proceedings took place after the act of 1840, and are therefore governed by it.

The language of the 3d sect. of 1840 is general, and embraces all species of estates for life, whether in improved lands yielding rents, issues, and profits, or not. It, therefore, embraced such an estate as the one in controversy here.

*Reed*, for defendant in error.—1. Could the life-estate of the husband be sold? By act of 16th June, 1836, sects. 68—71, life-estates are not *to be sold*, but to be *appraised*, to be delivered to *plaintiff* at the appraisement; sequestrator may be appointed. He had power to *rent* or to *sell*, to be applied to liens, according to priority. This was in substitution of, and repealed all other laws.

The act of 13th October, 1840, in Pamph. Laws of 1841, p. 3, sects. 6, 7, 8, 9, forms a new system as to life-estates; and *repeals* all the above sections, specifically. Where life-estates in improved lands are levied on, the *rents*, *issues*, and *profits* are to be sequestered, and sequestrator to be appointed. This does not apply to unimproved land. This system is still in force, and it is *inconsistent* with the right to buy and sell on execution by the sheriff any improved lands, &c., which produce rents, issues, and profits.

But unimproved lands could produce no rents, issues, and profits, and cannot be the subject of this proceeding; for it is the *rents*, *issues*, and *profits*, that are to be sequestered, and not the *estate*.

The act of 16th July, 1842, section 3, has reference to such life-estates as may be sold; not such as do not produce annual rents, &c.

It requires an appraisement of the estate; not the *rents*, &c. &c. And if the estate should not sell for two-thirds its value, proceedings were to be stayed, &c.

This act is now repealed by act of 17th February, 1845, Pamph. Laws, 42.

On general principles, the general acts, rendering lands liable to be taken in execution, and sold for the payment of debts, so far as regards life-estates in improved lands, are repealed by the act of 13th October, 1840.

A statute may be repealed, 1. By the express words of a subsequent statute. 2. By implication.

"Every *affirmative* statute is a repeal by implication of a precedent *affirmative* statute, so far as it is contrary thereto." Dwarris on Statutes, 673, in 9 Law Lib. p. 30, and 1 Ashmead, 179.

Then a life-estate, producing annual *rents, issues,* and *profits,* cannot be sold; a life-estate on unimproved lands may be sold as formerly.

PER CURIAM.—The very point in contest was ruled by this court in Denniston's Appeal, (1 Penna. State Rep. 201,) a case not published when the cause before us was tried. This cause, however, was properly decided on principle.

Judgment affirmed.

---

REIGART *v.* SMALL.

A judgment confessed in contemplation of bankruptcy, between the date of the passage of the bankrupt act, and the date when it is to go into operation, is not void as to creditors; though it may prevent the party confessing the judgment availing himself of the bankrupt law.

ERROR to the Common Pleas of York county.

*May* 19.—On the 22d of December, 1841, Slaymaker confessed a judgment to the York Bank. Other judgments were subsequently obtained against him to a large amount. On the 9th of December, 1842, he filed his petition in bankruptcy, which was decreed finally, April 29, 1843. The sheriff of the county having sold his land, paid the money into court, and on the 5th of December, 1843, an auditor was appointed to distribute the fund. One of the judgment creditors objected to the award being made to the judgment of the bank, on the ground that it was a fraud on the bankrupt act. An issue was directed, on the trial of which his honour, (Durkee, President,) instructed the jury, the judgment must have been in contemplation of bankruptcy, and voluntarily given to render it void under that act.

These are all the facts material in the decision by the court here.

*Fisher, Hambly,* and *Ramsay,* for the excepting creditor, plaintiff in error.

*Chapin, Mayer,* and *Evans,* contrà.

ROGERS, J.—This is an issue directed to try whether a judgment, The York Bank *v.* Henry Y. Slaymaker, entered the 22d December, 1841, on a note of the same date, for $18,000, was confessed in fraud of the bankrupt law of the United States. Also, how much if any thing was due on said judgment.

Numerous errors have been assigned which it is useless to consider,